UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 3:20-cr-00294 |
| ) | |
| v. ) | |
| ) | **FACTUAL BASIS** |
| BOBBY CHERRY ) | |
| ) | |

NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. From at least August 2019 through at least March 2020, the defendant, Bobby CHERRY, along with Russell Leroy CALVIN, Michael MONTGOMERY and others (collectively "the co-conspirators"), conspired to engage in a scheme to defraud Lowe's stores in the southeastern United States.

2. Lowe's, a home improvement retail store headquartered in North Carolina, provided customers with the opportunity to establish pre-funded escrow accounts, known as a Lowe's Accounts Receivable escrow accounts ("LAR escrow account"), which could be used to make purchases at any Lowe's store. Generally, a pre-funded LAR escrow account could be opened in any Lowe's store by a customer who completed a LAR escrow account application and provided a check or cash to fund the account at the time the LAR escrow account application was submitted. A LAR escrow account application was either completed at a computer terminal at a Lowe's store or by a paper application submitted to a Lowe's representative. A LAR escrow account application requested the customer provide basic information about the business. A LAR

escrow account also allowed for a list of "authorized buyers" who were permitted to make purchases at Lowe's using available funds for the specific LAR escrow account. Upon submission of an application, a LAR escrow account generally would be activated and the customer could immediately fund and make purchases through the account. Until the LAR escrow account was suspended or closed, purchases could be made through the account up to the amount of funds credited to the account. Synchrony Financial provided financial services to Lowe's for the LAR escrow accounts.

3. During the conspiracy, the co-conspirators opened more than 30 fraudulent business accounts, or LAR escrow accounts, at Lowe's stores for fictional landscaping and home improvement companies. The co-conspirators were frequently listed as authorized buyers on the fraudulent LAR escrow accounts opened in the scheme. CHERRY was listed as an authorized buyer on at least 13 of these fraudulent accounts.

4. The co-conspirators temporarily funded these fraudulent LAR escrow accounts by knowingly passing fictitious and worthless checks at Lowe's stores in multiple states, including North Carolina, South Carolina, and Georgia.

5. As part of the conspiracy, the co-conspirators passed more than 60 checks from approximately 25 checking accounts to temporarily fund the LAR escrow accounts with more than $620,000. Each of these checks was later declined by the sponsoring bank due to insufficient funds, closed accounts, unknown accounts, frozen/blocked accounts, and altered/fictitious checks.

6. For example, CHERRY passed fraudulent checks at Lowe's in the Western District of North Carolina on the following dates:

- On October 17, 2019, at approximately 5:18 p.m., CHERRY passed a $9,800 check at the Lowe's located at 2508 Cuthbertson Rd. in Waxhaw.
- On October 29, 2019, at approximately 2:58 p.m., CHERRY passed a $9,800 check at the Lowe's located at 8192 South Tryon St. in Charlotte.
- On October 30, 2019, at approximately 3:08 p.m., CHERRY passed a $9,700 check at the Lowe's located on 425 Earl Rd. in Shelby.

7. Once a fraudulent LAR escrow account was opened in the scheme and temporarily funded by these fictitious and worthless checks, the co-conspirators quickly utilized these LAR escrow accounts to make purchases of expensive landscaping goods, including zero turn mowers, and other items, before Lowe's could close the specific account based on the detection of fraudulent activity. During the course of the scheme, the co-conspirators obtained more than $450,000 in fraudulently purchased goods from Lowe's.

8. For example, CHERRY made purchases on fraudulent LAR accounts at Lowe's in the Western District of North Carolina on the following dates:

- On October 17, 2019, at approximately, 6;32 p.m., CHERRY purchased $4,055.49 in Lowe's products; and at 6:37 p.m., CHERRY purchased an additional $2,737.12

2

in Lowe's products. Both of these occurred at the Lowe's store located at 2350 W. Roosevelt Blvd. in Monroe under the TJ Lawncare Service LAR. The items purchased by CHERRY included a 23 horsepower zero-turn mower. CALVIN was also present at the Lowe's and made purchases under a different fraudulent LAR account.

- On October 17, 2019, at approximately 9:18 p.m., CHERRY purchased $2,358.70 of Husqvarna products under the TJ Lawncare Service LAR at the Lowe's store located at 5310 Ballantyne Commons Parkway in Charlotte. CALVIN was also present at the Lowe's and made purchases under a different fraudulent LAR account.
- On October 29, 2019, between approximately 5:08 p.m. and 5:15 p.m., CHERRY made two purchases at the Lowe's store at 509 River Highway in Mooresville. The purchases were for $1,175 and $4,055 and included a zero-turn mower and Husqvarna products. Both purchases were under the Kashay Williams LAR account.
- On October 30, 2019, at approximately 3:13 p.m., CHERRY purchased a zero turn mower for $3,852.66 under the Kashay Williams LAR account at the Lowe's store located at 425 Earl Road in Shelby.
- On October 30, 2019, at approximately 4:22 p.m., CHERRY purchased a zero turn mower for $3,556 under the Kashay Williams LAR account at the Lowe's store located at 3250 E. Franklin Blvd.in Gastonia.

9. When the co-conspirators opened a LAR escrow account, or when money was added to the account via cash or check, or when the account was used to make purchases at a Lowe's store, data related to the activity or transaction was transmitted via interstate wire to Synchrony data centers in Texas and Arizona.

10. The amount of intended loss that was known to or reasonably foreseeable by CHERRY was in excess of $550,000, but less than $1,500,000.

R. ANDREW MURRAY
UNITED STATES ATTORNEY


_____
WILLIAM T. BOZIN
ASSISTANT UNITED STATES ATTORNEY

3

### Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis, the Bill of Indictment, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Indictment, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

_____
C. Melissa Owen, Attorney for Defendant

DATED: 3/22/21

4

Case 3:20-cr-00294-MOC-DSC   Document 45   Filed 03/24/21   Page 4 of 4